In re the Petition for DISCIPLINARY ACTION AGAINST William L. LADD, an Attorney at Law of the State of Minnesota.

No. C1–90–1627.

Supreme Court of Minnesota.

Nov. 30, 1990.

William J. Wernz, Director of the Office of Lawyers Professional Responsibility, Patrick R. Burns, St. Paul, for appellant.

William L. Ladd, Minneapolis, pro se.

PER CURIAM.

This is an attorney discipline matter in which the Director of the Office of Lawyers Professional Responsibility (Director) charges respondent with misappropriation and trust account violations, misappropriation of partnership funds, client neglect, and noncooperation with the Office of Lawyers Professional Responsibility. Respondent did not file an answer to the petition for disciplinary action, and on August 31, 1990, we ordered the allegations contained in the petition deemed admitted. We agree with the Director's recommendation of disbarment.

I

Respondent was admitted to the practice of law in Minnesota on October 3, 1986. His first contact with the Office of Lawyers Professional Responsibility was on October 4, 1989, when he was mailed a notice of investigation of a client complaint. Respondent's replies to this and other complaints have been sporadic and often untimely. He failed to attend a prehearing meeting regarding the Director's charges surrounding various complaints on June 5, 1990. The petition for disciplinary action served on respondent on July 6, 1990, indicated a failure to answer would cause the allegations in the petition to be deemed admitted pursuant to Rule 13(b), Rules on Lawyers Professional Responsibility. He did not answer the petition. We summarize the allegations deemed admitted below.

1. *Misappropriation and Trust Account Violations*

Respondent represented Kathleen Zieminski in a marriage dissolution. Pursuant to the dissolution, respondent held trust funds of $23,214.50 representing a property settlement for immediate payment. A check drawn on the trust fund account was returned for insufficient funds. Respondent also held $1,785.00 on Zieminski's behalf. At various periods in the spring of 1990 respondent did not have sufficient

funds in the trust account to pay this sum. A review of the partial trust account books and records provided by respondent reveals that from October 1989 to February 1990 respondent continuously had less money in his trust account than the total amount owed to clients. Finally, respondent paid office expenses with trust account checks on five occasions.

Respondent did not keep a cash receipts journal, a disbursements journal, or subsidiary ledgers for individual clients. On June 7, 1989, respondent falsely certified he maintained books and records as required by Minn.R.Prof.Conduct 1.15(g). Respondent's misappropriation of funds, failure to maintain books and records, and false certification violated Minn.R.Prof.Conduct 1.15 and 8.4(c).

## 2. *Misappropriation of Partnership Funds*

In an informal partnership known as Labor Center Lawyers, respondent failed to pay overhead expenses after collecting expense payments from the other lawyers. Respondent converted to his own use approximately $14,000.00 of these funds. Respondent's misappropriation of these funds violated Minn.R.Prof.Conduct 8.4(c).

## 3. *Client Neglect and Noncommunication*

In April of 1989, respondent obtained a default judgment on behalf of Creek Meadows Homeowners Association (Association). Respondent did not return telephone calls of the president of the Association made twice a month from April through June 1989 regarding collection on the judgment. On June 28, 1989, the president of the Association wrote to respondent terminating the attorney-client relationship and requesting return of the file. The Association's new attorney repeatedly requested return of the file. Respondent did not return these telephone calls and has not returned the file to the Association.

Respondent represented Alex and Nancy Eggestein in a bankruptcy proceeding. Between late October of 1988 and mid-March of 1989 the Eggesteins repeatedly called respondent's office to inquire into the status of their bankruptcy. Respondent did not return the Eggestein's telephone calls, and did not file the bankruptcy petition until March 15, 1989. Respondent's neglect of client matters violated Minn.R. Prof.Conduct 1.3, 1.4, 1.15(b)(4), and 1.16(d).

## 4. *Non–Cooperation*

Respondent has not cooperated with the Director's investigation of client complaints. Respondent failed completely to respond to two complaints. Responses made were late or incomplete. Specifically, respondent provided an inadequate response to a request for trust account records. Respondent did not appear for a sworn statement regarding the trust account records and has not provided the requested records. Respondent failed to attend a prehearing meeting on charges of unprofessional conduct and failed to answer the petition for disciplinary action. Respondent's failure to cooperate with the Office of Lawyers Professional Responsibility violated Minn.R.Prof.Conduct 8.1(a)(3) and Rule 25, Rules on Lawyers Professional Responsibility.

## II

 Respondent appeared at oral argument and offered to resign in lieu of imposition of disbarment. His request is based on alleged personal problems mitigating against disbarment. While respondent's circumstances certainly evoke the court's sympathy, this court is not an original factfinding body in attorney discipline matters, and respondent's failure to answer the petition with any mitigating circumstances bars our consideration of such issues. *See In re Kraemer*, 361 N.W.2d 402, ·405 (Minn.1985). Moreover, this court has repeatedly held resignation is inappropriate when discipline is justified. *In re McCoy*, 442 N.W.2d 148, 148 (Minn.1989); *In re Peck*, 302 N.W.2d 356, 360 (Minn.1981). The sole issue before us is the appropriate discipline for respondent's misconduct based on the allegations in the petition for disciplinary action deemed admitted.

In determining appropriate discipline, the court weighs the nature of the misconduct, the cumulative weight of disciplinary rule violations, the harm to the public, and the harm to the legal profession. *See In re Smith,* 381 N.W.2d 431, 434 (Minn.1986). The nature of respondent's misconduct, including misappropriation of funds, requires the strictest discipline, in most cases disbarment.

> It is only on rare occasions that this court has failed to order disbarment for attorney misappropriation of client funds, and then only because of a showing by clear and convincing evidence of such substantial mitigating circumstances as to demonstrate that "respondent did not intentionally convert funds to his own use."

*In re Parks,* 396 N.W.2d 560, 562 (Minn. 1986) (citation omitted). Respondent has not offered mitigating circumstances or explained the missing funds. From the absence of an adequate explanation we may infer respondent used the funds to his benefit. *See In re Isaacs,* 451 N.W.2d 209, 211 (Minn.1990).

Disbarment is further warranted by respondent's misappropriation of the $14,000.00 in expense funds of the Labor Center Lawyers. While the primary purpose of attorney discipline is protection of the public, *In re Peterson,* 274 N.W.2d 922, 925, (Minn.1979), respondent's dealings with his office associates reflect on the integrity of the bar as a whole. Maintaining the public's confidence in the profession requires strict discipline even for misconduct not involving clients directly. *In re Okerman,* 310 N.W.2d 568, 572 (Minn. 1981). Respondent's neglect of client matters and failure to communicate with clients not only reflects on the integrity of the profession, but results in direct harm to client interests. The cumulative weight of respondent's misconduct therefore warrants the severe discipline of disbarment.

We have imposed discipline short of disbarment in similar cases only when the attorney cooperates with the Director's office and expresses a willingness to conform behavior to the rules governing the profession. *In re Maki,* 449 N.W.2d 712, 713 (Minn.1989). A lawyer has an ethical obligation to cooperate in the investigation and resolution of complaints. *In re Gorgos,* 382 N.W.2d 857, 858 (Minn.1986). Respondent has not indicated an interest in continuing to practice law, much less a willingness to conform his conduct to the Rules of Professional Conduct. Respondent's failure to cooperate with the Director's office demonstrates a resistance to the authority of the Office of Lawyers Professional Responsibility. The resulting potential for further harm to the public, along with the nature of respondent's misconduct, requires disbarment.

Respondent William L. Ladd is ordered disbarred.