In re Petition for DISCIPLINARY AC-
TION against Allan R. HAWKINS, III,
a Minnesota Attorney, Registration
No. 42663.

No. A11–1454.

Supreme Court of Minnesota.

July 31, 2013.

See also, 623 N.W.2d 431, 988 S.W.2d 927.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Allan R. Hawkins, III, Scottsdale, Arizona, pro se.

## OPINION

PER CURIAM.

A Texas court disbarred respondent attorney Allan R. Hawkins, III. After the Director of the Office of Lawyer's Professional Responsibility ("the Director") learned of Hawkins's disbarment, the Director petitioned this court to impose reciprocal discipline on Hawkins in Minnesota. Because we conclude that the disciplinary proceedings in Texas were fundamentally fair and that disbarment would not be unjust or substantially different from the discipline that would be imposed in Minnesota, we disbar Hawkins.

## I.

At one time, Hawkins was admitted to practice law in at least four states: Arizona, Minnesota, North Dakota, and Texas. In 1997, the State Bar of Texas filed a disciplinary petition against Hawkins, alleging that Hawkins committed professional misconduct in his representation of a criminal defendant. In Texas, state district court judges conduct disciplinary trials and impose attorney discipline. During the trial, the court afforded Hawkins numerous procedural protections, including permitting him to retain counsel, respond to the petition, present evidence, participate in the proceedings, and testify in his own defense.

The Texas district court made the following factual findings after the trial.[1] In

August 1994, a Texas district court ordered Hawkins to represent D.S. in a misdemeanor marijuana-possession case. At that time, Hawkins's practice focused on estate planning and taxation, not criminal defense. Hawkins filed a motion requesting that the court discharge him as D.S.'s counsel because, in his view, he was not competent to represent D.S. in a criminal matter without violating the Texas Disciplinary Rules of Professional Conduct. Nonetheless, Hawkins filed a number of motions and made several court appearances in the criminal proceeding. When the State offered a plea deal, Hawkins forwarded the offer to D.S., but refused to discuss the State's offer with him. Without D.S.'s consent, Hawkins rejected the plea deal, explaining to the prosecutor that D.S. did not have sufficient funds to pay the fine included as part of the plea deal. Hawkins then filed a second motion requesting his discharge as D.S.'s counsel.

The court rejected Hawkins's motion following a hearing. The court found that Hawkins was competent to represent D.S. and issued an order that required Hawkins to continue his representation of D.S. in the criminal proceeding. Contrary to the court's order, Hawkins sent D.S. the following letter:

I am enclosing a copy of an order which I received today. Judge Fitz—Gerald has decided that you are not entitled to a lawyer.

Judge Fitz—Gerald swore an oath to God and to man that he would uphold the *Constitution* and laws of the United States and Texas. He has decided that you are not entitled to a lawyer.

Apparently you are only entitled to a lawyer if a cash pay-off is made. I will

---

1. Our summary of the facts underlying the Texas disciplinary proceeding is taken from

*Hawkins v. Commission for Lawyer Discipline,* 988 S.W.2d 927 (Tex.App.1999).

**666**

not make a cash pay-off to obtain judicial favoritism. I believe it is a crime. Apparently that means that you don't get a lawyer. That is peculiar.

I must know even less about the *Constitution* than I thought. I thought the United States *Constitution* applies to you. I thought you are entitled to a lawyer under the *Constitution.*

Although I am not permitted to represent you on the substance of this matter. I have done what I can do. I wish you well.

When Hawkins received notice of a docket call for the case, he did not attend or notify D.S. about it. At the docket call, the court scheduled D.S.'s case for trial, but neither Hawkins nor D.S. appeared for trial.

After D.S. failed to appear for trial, the district court clerk left a message for Hawkins regarding the possible revocation of D.S.'s bond. In response, Hawkins wrote to the court as follows:

Today my office received a call for [D.S.] I do not represent [D.S.] This is not news. The court knows it. The file in your office demonstrates that. I am not his courier. I do not work for him. He does not work for me. He is not at this office. He is not at this telephone number.

If you wish to contact [D.S.], do not call me or write me.

If you wish to contact [D.S.], contact [D.S.] [D.S.] is easy to contact. He responds to contacts. [D.S.] moved to Midland County so that he would be available when the court needed him. I will not act as an intermediary between the court and [D.S.] I will not pass messages back and forth. If you have any message for him it is up to you to contact him.

Several days later, the court notified D.S. that it intended to revoke his bond and had

issued a warrant for his arrest. The district court clerk also attempted to notify Hawkins, but could not reach him. The next day, Hawkins wrote the following message to the court: "I was out of the office yesterday. Last evening I reviewed a telephone message ... relating to a hearing yesterday. As the Court knows, I do not represent [D.S.]." The court reinstated D.S.'s bond, but D.S. represented himself at the bond hearing. After the bond hearing, the court appointed new counsel to represent D.S. in the criminal matter.

The Texas district court concluded that Hawkins committed professional misconduct in his representation of D.S. by failing to communicate with D.S., to continue his representation of D.S. after the court ordered him to do so, and to take steps to protect D.S.'s interest after termination of the representation. The court imposed a 1–year suspension from the practice of law followed by a 3–year probationary period. The court also ordered Hawkins to pay $15,000 in attorney fees to the State Bar of Texas and to provide 15 hours per month of pro bono services to indigent persons during the probationary period, which he was required to verify by filing a monthly report of his pro bono activities with the State Bar of Texas. The Texas Court of Appeals affirmed. *Hawkins v. Comm'n for Lawyer Discipline*, 988 S.W.2d 927, 942 (Tex.App.1999).

In 2003, the State Bar of Texas moved for further discipline against Hawkins because he did not comply with the requirements of his suspension and probation. Specifically, Hawkins failed to pay the $15,000 in attorney fees and to demonstrate that he had complied with any of the pro bono requirements. The State Bar of Texas sent Hawkins a series of letters via both regular and certified mail inquiring about his failure to comply with the terms

of his suspension, but Hawkins did not respond. The State Bar of Texas also gave Hawkins notice of the new disciplinary petition, but Hawkins's failure to respond led the Texas district court to conclude that Hawkins had defaulted on the matter. On September 23, 2003, the court disbarred Hawkins from the practice of law in Texas.

Other states have imposed reciprocal discipline on Hawkins. Following Hawkins's initial suspension in Texas, the North Dakota Disciplinary Board sought reciprocal discipline. *In re Hawkins*, 623 N.W.2d 431, 434 (N.D.2001). Hawkins contested the imposition of discipline and participated in the proceedings, but the North Dakota Supreme Court suspended him for 1 year and placed him on probation for an additional 3 years. *Id.* at 433.

The State Bar of Arizona also sought reciprocal discipline against Hawkins. It notified him through a 2001 letter requesting additional information about the Texas disciplinary proceedings. Following the notification, the Arizona disciplinary action did not resume until 2011, when the Supreme Court of Arizona imposed a 1–year suspension on Hawkins followed by 2 years of probation.[2]

Hawkins did not notify the Director of any of the disciplinary actions against him, which constitutes a violation of Rule 12(d) of the Minnesota Rules on Lawyers Professional Responsibility (RLPR). Instead, the State Bar of Arizona informed the Director in May 2011 about Arizona's disciplinary proceedings. The Director began his investigation into Hawkins's misconduct by sending Hawkins multiple letters notifying him of the investigation and requesting additional information. Hawkins did not respond to or cooperate in any way with the Director's investigation.

On August 17, 2011, the Director filed a petition for disciplinary action against Hawkins, seeking reciprocal discipline under Rule 12(d), RLPR. The Director unsuccessfully attempted to serve Hawkins personally at his last known address. The Director then applied to this court for an order suspending Hawkins under Rule 12(c), RLPR, which allows for the suspension of an attorney who cannot be located. On September 2, 2011, we suspended Hawkins and gave him 1 year in which to file a motion to vacate the suspension order. Hawkins did not move to vacate our order. On October 9, 2012, we deemed the allegations in the disciplinary petition admitted, pursuant to Rule 13(b), RLPR. In that same order, we directed Hawkins to serve and file a response explaining the reasons why we should not impose reciprocal discipline on him. We also asked the parties to submit written briefs and the Director to serve the order by publication. Hawkins failed to respond to any of our orders. The Director seeks to disbar Hawkins.

## II.

The sole question presented by this case is whether we should impose reciprocal discipline on Hawkins. Under Rule 12(d), RLPR, the Director may petition for reciprocal discipline based on his knowledge, from any source, "that a lawyer licensed to practice in Minnesota has been publicly disciplined ... in another jurisdiction." Unless we determine otherwise, a final determination in another jurisdiction that the lawyer has committed misconduct "establish[es] conclusively the misconduct for purposes of disciplinary

---

**2.** When the Supreme Court of Arizona imposed reciprocal discipline on Hawkins in 2011, the court apparently was unaware of the 2003 proceeding in which the Texas district court had disbarred Hawkins.

proceedings in Minnesota." Rule 12(d), RLPR. We may impose reciprocal discipline "unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." *Id.; accord In re Wolff,* 810 N.W.2d 312, 316 (Minn.2012). Our task in this case is to determine whether the disciplinary procedures in Texas were fair and, if so, whether the imposition of reciprocal discipline would be unjust or substantially different from the discipline that Hawkins would receive in Minnesota for his misconduct.

### A.

In order to meet the procedural fairness requirement, the disciplinary proceedings in the other jurisdiction must be "consistent with fundamental fairness and due process." *In re Schmidt,* 586 N.W.2d 774, 775 (Minn.1998). "[W]e review the record of the underlying proceedings to see if the lawyer being disciplined received notice of the allegations against him and whether he was provided an opportunity to respond to those allegations." *Id.* at 775–76. "We have consistently held that when an attorney is given notice of the proceedings and an opportunity to participate in the process by presenting evidence of good character and/or mitigation, [the procedural fairness] requirement is satisfied." *In re Keller,* 656 N.W.2d 398, 401 (Minn. 2003); *accord Wolff,* 810 N.W.2d at 316; *In re Koss,* 572 N.W.2d 276, 277 (Minn. 1997).

Here, Texas provided Hawkins with notice of, and Hawkins participated in, the initial Texas disciplinary proceeding that resulted in his suspension. In that proceeding, over which a Texas district court judge presided, Hawkins retained counsel, was able to present evidence, and eventually exercised his right to appeal the court's decision imposing discipline. Accordingly, the initial Texas disciplinary proceeding clearly complied with the requirements of due process and fundamental fairness.

Although Hawkins elected not to participate in the second Texas disciplinary proceeding that led to his disbarment, the second disciplinary proceeding also met the requirements of due process and fundamental fairness. As in the first proceeding, Hawkins received notice of the second proceeding and had an opportunity to respond to the allegations against him and rebut them through the presentation of evidence, even though he did not exercise his right to do so. As we have stated, "an attorney's decision not to participate in the disciplinary proceedings in another jurisdiction is not relevant to our determination of the fairness of those proceedings." *Wolff,* 810 N.W.2d at 316. In fact, we have routinely concluded that another state's disciplinary proceedings were fair, despite an attorney's failure to participate in them, when the proceedings provided the attorney with notice and an opportunity to be heard. *See id.* at 316–17; *In re Roff,* 581 N.W.2d 32, 34 (Minn.1998); *In re Morin,* 469 N.W.2d 714, 716–17 (Minn.1991). Because Texas gave Hawkins notice of and an opportunity to be heard in both disciplinary proceedings, we conclude that the disciplinary proceedings in Texas were consistent with principles of fundamental fairness and due process.

### B.

Before imposing reciprocal discipline, we must also address whether the discipline imposed in Texas was unjust or substantially different from the discipline that Hawkins would receive in Minnesota for the misconduct. *See* Rule 12(d), RLPR. The question is not whether we

would impose the same discipline if the attorney's disciplinary proceedings had originated in Minnesota, but rather whether the "discipline imposed by [Texas] is unjust or substantially different from [the] discipline warranted in Minnesota." *In re Meaden,* 628 N.W.2d 129, 134 (Minn.2001) ("Although we might have imposed different discipline, either more or less, had [the attorney's] disciplinary proceedings originated in Minnesota, that is not the situation presented.").

■ Hawkins's misconduct falls into four categories. First, Hawkins failed to communicate with D.S. Second, Hawkins made misrepresentations to D.S., to the prosecutor in D.S.'s case, and to a court. Specifically, he lied to D.S. by stating that he was no longer D.S.'s attorney and that the court had determined that D.S. was not entitled to an attorney. He also lied to the prosecutor about D.S.'s response to a plea offer that Hawkins never shared with D.S. And he lied to the court by repeatedly asserting that he was not D.S.'s attorney of record, even though the court had ordered him to continue his representation of D.S. Third, Hawkins willfully defied court orders, including the order directing him to continue his representation of D.S. Fourth, Hawkins failed to cooperate with the State Bar of Texas's investigation into his noncompliance with the court order suspending him from the practice of law in Texas.[3]

■ We have held that "willful disobedience [of] a single court order may alone justify disbarment." *In re Daly,* 291 Minn. 488, 495, 189 N.W.2d 176, 181 (1971) (disbarring an attorney for, among other things, continuing to file lawsuits after a federal court had issued an order prohibiting him from relitigating a particular issue and willfully defying an order from this court forbidding him from engaging in further proceedings in a case before a justice of the peace); *see also In re Grzybek,* 567 N.W.2d 259, 265 (Minn.1997) (stating that the attorney's "behavior provided us with at least three *separate* grounds upon which he could be disbarred," including "his repeated failure to comply with court orders" (emphasis added)); *In re Joyce,* 242 Minn. 427, 431, 65 N.W.2d 581, 583 (1954) (holding that an attorney was subject to disbarment based on his willful disobedience of a probate court order requiring him to return excess attorney fees paid to the executor of an estate). We also have considered an attorney's failure to comply with a disciplinary order when ordering disbarment. *Grzybek,* 567 N.W.2d at 264.

Hawkins repeatedly and willfully defied a Texas district court order requiring him to represent D.S. by making false statements that he did not represent D.S., failing to attend court hearings, instructing the court on two occasions to stop contacting him about the case, and returning the case file to the court. Hawkins's actions put his client's liberty at risk; the court

---

**3.** Hawkins's misconduct in Texas violated a number of Minnesota rules, including: Minn. R. Prof. Conduct 1.4 (requiring an attorney to communicate with his or her client); 1.16(c) (mandating that an attorney comply with applicable rules when withdrawing from representation and continue to represent a client when ordered to do so by a court); 1.16(d) (protecting a client's interest upon termination of the representation); 3.4(c) (prohibiting an attorney from knowingly disobeying an obligation under the rules of a tribunal); 4.1 (forbidding an attorney from knowingly making a false statement in the course of representing a client); 8.1 (mandating cooperation in a disciplinary proceeding); 8.4(c) (inhibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (restricting an attorney from engaging in conduct prejudicial to the administration of justice); and Rule 25, RLPR (requiring an attorney to cooperate in a disciplinary proceeding).

nearly revoked D.S.'s bail after D.S. failed to appear at his trial. In addition, Hawkins defied the court order requiring him to perform pro bono work and to pay the attorney fees incurred by the State Bar of Texas. Hawkins's repeated failure to comply with court orders is arguably more egregious than the noncompliance in *Grzybek* and *Joyce* that resulted in the disbarment of the attorneys in those two cases. *See Grzybek*, 567 N.W.2d at 264–265 (disbarring an attorney for, among other things, failing to comply with a Minnesota Court of Appeals' order requiring him to remit a filing fee, an order directing him to return a client file, and an order of this court requiring him to send notice of his suspension to his clients, opposing counsel, and to the tribunals in which he had matters pending); *Joyce*, 242 Minn. at 431, 65 N.W.2d at 583 (disbarring an attorney for, among other things, defying a court order requiring him to return excess attorney fees in a probate matter).

■■■ Hawkins's misrepresentations to D.S. and the prosecutor also constituted serious misconduct. Making false statements is "misconduct of the highest order and warrants severe discipline." *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992); *see also In re Lyons*, 780 N.W.2d 629, 636 (Minn.2010); *In re Dedefo*, 752 N.W.2d 523, 532 (Minn.2008). Indeed, Hawkins's misrepresentations to D.S. nearly deprived D.S. of one of the most fundamental rights belonging to a criminal defendant: the right to counsel. *See* U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (describing the right to counsel as a fundamental constitutional right).

■■■ Finally, Hawkins failed to cooperate in multiple disciplinary proceedings. He did not respond to any of the letters from the State Bar of Texas inquiring about his failure to comply with the terms of his suspension, and he did not partici-

pate in the second disciplinary proceeding in Texas or in the Arizona disciplinary proceeding. Hawkins's lack of cooperation has continued in Minnesota. He did not inform the Director about any of his prior disciplinary proceedings, he failed to respond to the Director's investigatory letters, and he has not appeared in this disciplinary proceeding. Hawkins's extensive lack of cooperation in multiple disciplinary proceedings provides further support for the sanction of disbarment. *See Wolff*, 810 N.W.2d at 318 (relying on an attorney's failure to cooperate with disciplinary proceedings in this and another state as a basis for reciprocally imposing disbarment); *In re Heinemann*, 606 N.W.2d 62, 64 (Minn.2000) (same); *Schmidt*, 586 N.W.2d at 776 (same); *Morin*, 469 N.W.2d at 717 (same).

The cumulative weight and severity of Hawkins's misconduct leads us to conclude that the disbarment by Texas is neither unjust nor substantially different from the discipline warranted in Minnesota. We therefore impose reciprocal discipline and order Hawkins's disbarment from the practice of law in Minnesota.

Accordingly, we order that:

1. Respondent Allan R. Hawkins, III, is disbarred from the practice of law in the State of Minnesota, effective upon the date of filing of this opinion.

2. Respondent shall pay to the Director the sum of $900 in costs under Rule 24, RLPR, and shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals).

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.